IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jacori Andre' Carter,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:14cv151 (LMB/IDD) |
| Keith Davis, et al.,<br>Defendants. | )<br>)<br>)<br>) | |

MEMORANDUM OPINION

Jacori Andre' Carter, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Roderic L. Tuell ("defendant or Tuell"), the sole remaining defendant in this action, violated his Eighth and Fourteenth Amendment rights by ordering plaintiff to be placed in full restraints during his one-hour recreational time for the thirty-day period between August 24, 2013 and September 23, 2013.[1] Plaintiff initially named Keith Davis, Warden of Sussex I State Prison ("Sussex I"); Joycetine Boone, Assistant Warden of Sussex I; Wendy S. Hobbs, Regional Administrator; and Tuell, Unit Manager at Sussex I, as defendants. See Compl. [Dkt. No. 1]. The Court dismissed plaintiff's claims against Davis, Boone, and Hobbs, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. See Mem. Op. & Order, March 18, 2014 [Dkt. No. 7].

Before the Court is Tuell's Motion for Summary Judgment, see Dkt. No. 17, to which plaintiff filed an opposition, including affidavits. [Dkt. No. 20]. For the reasons that follow,

---

[1] Plaintiff also apparently was placed in restraints during his recreation hour between July 28, 2014 and August 27, 2014. See Plaintiff's Order to Show Cause for An [sic] Preliminary Injunction [Dkt. No. 27], at 2 ¶ 2. Because plaintiff raised this additional allegation after the defendant filed his Motion for Summary Judgment, the defendant had no reason to respond to this allegation. Accordingly, the Court will not specifically consider plaintiff's additional allegations; however, plaintiff's additional allegations are governed by an analysis identical to that in this Opinion and would fail for the same reasons discussed in this Opinion.

defendant's Motion for Summary Judgment will be granted.

## I. Background

Plaintiff is currently confined to segregation at Sussex I. See Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") [Dkt. No. 18], Ex. 1 (Tuell Aff.) ¶ 4. Pursuant to that institution's policy, all segregation offenders are placed in handcuffs and shackles during any movement outside of their cells, and are placed "in full restraints during escort to and from recreation." Id. ¶ 6. Plaintiff describes "full restraints" as "handcuffs, shackles, black box, and waistchain." Plaintiff's Counter-Affidavit in Response to Defendant's Motion for Summary Judgment ("Pl.'s Aff.") [Dkt. No. 20], at 5 ¶ 6. On either August 23 or August 24, 2013, at the end of his recreation hour, plaintiff refused to be restrained to be escorted back to his cell, and was charged with disobeying a direct order. Tuell Aff. ¶ 5.[2]

After this incident, a decision was made to keep plaintiff in full restraints during his recreation hour for a period of thirty days. Id. ¶ 7. It is unclear from the record whether Tuell made this decision himself, or whether some other individual participated in the process. It appears that Tuell was complying with an internal policy, effective July 10, 2012, stating that any segregation offender who refused to exit the recreation yard would be placed in restraints for a period of thirty days for a first offense and a for a period of sixty days for a second offense. See Defendant's Objections to Plaintiff's Discovery Requests [Dkt. No. 25], Ex. A, at Unnumbered Page 4.

Plaintiff contends that Tuell "was the one who instructed his subordinates to place [plaintiff] on full restraints" during his one hour of recreation. Plaintiff's Motion to Amend

---

[2] Plaintiff's Disciplinary Offense report reflects the date of the incident as August 24, 2013. See Def.'s Mem. Enc. A, at 1. In response to a regular grievance, however, Assistant Warden Boone stated that the incident occurred on August 23, 2013. See Compl., Ex. A., at 2.

("Mot. to Amend") [Dkt. No. 4], at 3 ¶ 2A. The complaint also alleges that Tuell decided to place plaintiff in full restraints before he received the disciplinary charge. See Pl.'s Aff., at 5 ¶ 6. Plaintiff claims that he had a serious knee injury, which the use of restraints aggravated and made it difficult for plaintiff to move around during recreation. He therefore argues that he was unable to exercise and was unfairly punished for the disciplinary charge he had already received. See, e.g., Compl., "Statement of Claim" ¶ 1. Plaintiff also argues that Tuell's decision to place him in full restraints during his exercise hour for a period of thirty days was not authorized by any Virginia Department of Corrections ("VDOC") or internal policy, and violated his Eighth and Fourteenth Amendment rights.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are

material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the nonmoving party is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath . . . is not enough to defeat a motion for summary judgment. [The plaintiff] has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.D.C. 1994).

### III. Analysis

Summary judgment in favor of defendant Tuell is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the decision to place plaintiff in full restraints during his recreational hour for a period of thirty days did not violate plaintiff's Eighth or Fourteenth Amendment rights. To the extent that disputes of fact exist, these disputes are not material, and do not preclude the entry of summary judgment in favor of the defendant.

A. Defendant's Personal Involvement in the Complained-of Action

As an initial matter, it appears that the defendant may not have had sufficient personal involvement in the alleged unconstitutional action to be liable to plaintiff. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, to prevail in an action under § 1983, a plaintiff must establish that a defendant personally committed acts that deprived plaintiff of his constitutional rights. See, e.g., Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotations omitted). Although plaintiff alleges that the defendant personally decided to impose restraints on plaintiff during his recreational hour, nothing in the record definitively supports plaintiff's conclusion. The defendant himself does not specify who decided to place plaintiff in restraints, and does not allege that he counseled the correctional officers on duty to take such action. It is undisputed that defendant responded to plaintiff's informal complaint regarding the decision to use full restraints by informing plaintiff that the correctional officers followed proper procedure when applying plaintiff's restraints. See Compl., Ex. A, at 5. The procedure relied upon appears to be the July 2012 policy, written by a Major Jones, authorizing the use of restraints during exercise for a period of thirty days for inmates who fail to comply with instructions to leave the recreation yard. The defendant does not claim to have participated in writing the policy, nor does he claim to have counseled staff on its implementation.

Therefore, the record indicates that the defendant may not have had any personal involvement in the decision to place plaintiff in full restraints during his recreation hour. Without such personal involvement, the defendant cannot be held liable to plaintiff under § 1983.

5

B. Eighth Amendment Violations

To the extent that Tuell's involvement with the decision to hold plaintiff in restraints is a disputed issue of fact, this dispute does not preclude the entry of summary judgment in his favor, because the evidence shows that, even if the defendant was responsible for the decision, the decision to place plaintiff in restraints did not violate the Eighth Amendment.

Plaintiff alleges that the decision to place him in full restraints during recreation constitutes cruel and unusual punishment, because the restraints "deprived him of a basic human need of outside 'exercise.'" Pl.'s Aff., at 9 ¶ 1. Plaintiff also states, however, that he is "'not' attempting an Eighth Amendment violation with regard to lack of recreation, but maintains he was subjected to cruel and unusual punishment via [being] placed in full restraints . . . ." Id. at 20 ¶ 14. He states that, due to his knee injury, the use of restraints during his exercise period caused him to suffer "extra physical pain." Id. at 21 ¶ 15.

To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, a plaintiff must show that the condition complained of caused a "sufficiently serious" deprivation of a basic human need. Farmer v. Brennan, 511 U.S. at 834. Only extreme deprivations will make out an Eighth Amendment claim, and plaintiff has the burden of alleging facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in significant physical or emotional injury. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993).

To meet the second prong, a plaintiff must show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and disregarded the risk posed. Farmer, 511 U.S. at 837.

Courts have found that a complete denial of an inmate's ability to exercise violates the Eighth Amendment. See, e.g., Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992), cert. denied, 506 U.S. 905 (1992). When an inmate complains of restrictions on his right to exercise, however, the Fourth Circuit has generally looked to the totality of the circumstances surrounding the restriction, as well as the reasons for the restriction, to determine whether the inmate's Eighth Amendment rights have been violated. While "generally a prisoner should be permitted some regular out-of-cell exercise," "confinement or punishment conditions imposed under one set of circumstances may constitute an Eighth Amendment violation; yet the same conditions, imposed under different circumstances, would not." Id. at 191; see also Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980). Accordingly, to violate an inmate's Eighth Amendment rights, officials must generally completely deny an inmate the right to exercise for "an extended period of time," and the inmate must suffer a "specific harm resulting from the deprivation." Brown v. Lamanna, 304 Fed. Appx. 206, 207 (4th Cir. 2008) (per curiam). Without some indication that the restriction negatively impacted the inmate's physical or mental health, there is no Eighth Amendment violation. See, e.g., Clay, 626 F.2d at 347.

Therefore, regardless of whether plaintiff's allegations of cruel and unusual punishment arise from the use of restraints or from the restriction on his ability to exercise, plaintiff must show that he suffered from a specific injury. Although plaintiff states that he suffered from "mental anguish and emotional distress," Mot. to Amend, at 6 ¶ 10, there is no evidence in the record to

support these statements, and there is no evidence that plaintiff's existing knee injury intensified as a result of the restraints applied during his recreation hour. Absent evidence of injury, the evidence shows that the application of restraints did not violate the Eighth Amendment.

In addition, it is undisputed that plaintiff has not been completely deprived of his right to exercise. Although for thirty days he was required to "recreate alone" and in full restraints, Def.'s Mem., at 6, he was permitted to exercise outside of his cell for one hour a day during this time. Plaintiff does not dispute this fact, although he argues that, under Perkins v. Kan. Dep't. of Corrs., 165 F.3d 803, 810 (10th Cir. 1999), he is "constitutionally entitled to 5-hours of out of the cell 'exercise,' meaning that [he] should be able to do jumping jacks, push-ups, etc., while at recreation," Pl.'s Aff., at 5 ¶ 6. It is unclear how plaintiff came to this conclusion. In Perkins, the Tenth Circuit found that an inmate who had been denied all out-of-cell recreation for approximately one year had stated a claim for a violation of his Eighth Amendment rights. See Perkins, 165 F.3d at 806 n.4, 810. As the evidence shows that plaintiff has not been denied all out-of-cell recreation, Perkins is irrelevant to plaintiff's situation.

In addition, although plaintiff classifies the decision to place him in restraints as "sadistic," see, e.g., Mot. to Amend, at 3 ¶ 2A, the evidence shows that the decision to place plaintiff in full restraints was not made with deliberate indifference or with a sadistic desire to cause harm. According to defendant, when a segregation inmate refuses to submit to be restrained at the end of his recreation hour, officials must employ additional security measures to restrain the inmate. Tuell Aff. ¶ 6. An inmate usually receives disciplinary charges for failing to obey an order, and the inmate "may be required to remain in full restraints during subsequent recreation periods" "due to [his] unpredictable and rebellious behavior." Id. When plaintiff failed to submit to restraints after his recreation hour, he was subjected to this same policy. Defendant states that the decision

to place plaintiff in full restraints "was a precautionary measure," and that "inmates assigned to segregation status are recreated alone so there is no danger of attack by another offender." Id. ¶ 7. Therefore, defendant's actions did not constitute deliberate indifference to plaintiff's health or safety, since defendant placed plaintiff in restraints due to security concerns and as a way to protect plaintiff from harm. Defendant's motivations also render any dispute about the exact date of the decision immaterial to the entry of summary judgment. Regardless of whether plaintiff received his disciplinary charge for failure to obey an order on August 23 or August 24, defendant's decision to place him in restraints for the next thirty days was motivated by security measures and a need to protect plaintiff.

As the evidence shows that plaintiff did not suffer any injury as a result of the restriction on his ability to exercise, that plaintiff was not completely deprived of his ability to exercise, and that defendant did not act with a culpable state of mind, defendant's actions did not violate the Eighth Amendment.

C. Fourteenth Amendment Due Process

The evidence also shows that plaintiff's Fourteenth Amendment Due Process rights were not violated by the decision to place him full restraints during his recreation hour. Plaintiff alleges that, because he was actually placed in full restraints before receiving his disciplinary charge on August 24, 2013, the use of restraints was actually a disciplinary measure, imposed before he had "the chance to get witness testimony, have a hearing, or present evidence" in response to his charge. Pl.'s Aff., at 10 ¶ 1. Regardless of the fact that the record is unclear as to when, exactly, plaintiff was placed in restraints, the evidence shows that plaintiff's Fourteenth Amendment rights were not violated.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving

"any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Although their constitutional protections are limited by the "exigencies of the institutional environment," inmates are entitled to basic due process protections before being deprived of a life, liberty, or property interest. Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). In general, an inmate's liberty interest is limited to the right to be free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Therefore, in order to implicate the protections of the Due Process Clause, an inmate must first show that the conditions of his confinement constitute an atypical and significant hardship.

Because there is no generally-accepted baseline for determining what qualifies as an atypical and significant hardship, Wilkinson v. Austin, 545 U.S. 209, 223 (2005), a court determining whether an inmate possess a protected liberty interest in a specified condition must conduct a fact-specific analysis of the "conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life." Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997). As stated above, although an inmate has a right to recreation, this right is not absolute. Specifically, "exceptional circumstances" may exist in which officials can place reasonable restrictions on an inmate's right to exercise. Mitchell, 954 F.2d at 191. Thus, reasonable restrictions on an inmate's right to exercise are part of the normal incidents of confinement, and such restrictions do not implicate the protections of the Due Process Clause. See Beverati, 120 F.3d at 504 (finding that inmates in administrative segregation who only left their cells three to four times per week and were not allowed any outdoor recreation did not suffer from an atypical and significant hardship); see also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (finding that a 37-day denial of exercise privileges did not implicate the Due

Process Clause); Acre v. Walker, 139 F.3d 329, 332, 336 (2d Cir. 1998) (finding that an 18-day confinement in administrative segregation, without exercise privileges, did not violate the Due Process Clause).

Here, the evidence clearly shows that the decision to restrain plaintiff during his recreation hour was reasonable and did not constitute an atypical and significant hardship. Although plaintiff states that the "full restraints" used during his exercise hour differ from the ordinary restraints used whenever segregation-level inmates leave their cells, see Pl.'s Aff., at 12 ¶ 3, the fact that he may have been subjected to a higher degree of restraint is irrelevant to the summary judgment analysis. Plaintiff is confined to segregation. Therefore, he is not privy to the same conditions faced by an inmate in the general population. Specifically, he is subject to being placed in shackles every time he leaves his cell. Such restraints are an ordinary incident of segregation, imposed as a result of repeated disciplinary problems. Plaintiff's failure to follow orders has led to harsher conditions of confinement than some of his fellow inmates. Given his behavioral issues, the decision to restrain plaintiff during his exercise hour is reasonable and does not completely deprive him of the ability to exercise. Therefore, the use of full restraints during exercise does not impose any conditions different than those he already experiences in segregation. Other inmates in segregation have experienced the same conditions when they have failed to follow orders. See Pl.'s Aff., Ex. C-E (providing complaints filed by other inmates subjected to restraints during exercise).

Plaintiff states that "[there] is 'no' Department of Corrections Operating Procedures policy or procedures 'verifying' that prison officials can order the prisoner to take recreation while in full restraints," and that being subjected to full restraints during exercise is therefore improper. Pl.'s Aff., at 4 ¶ 5. Plaintiff incorrectly assumes, however, that the VDOC

Operating Procedures provide the sole basis for prison officials' authority to take specific actions. When maintaining the safety and security of prisons, officials have wide discretion to take whatever actions they deem necessary. See, e.g., Turner v. Safley, 482 U.S. 78, 84-85 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987). As long as these actions do not violate the Constitution, courts will not second-guess the officials' judgment. See, e.g., Pell v. Procunier, 417 U.S. 817 (1974) ("[Security decisions] are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."). Accordingly, even if the VDOC Operating Procedures do not specifically address the use of restraints during exercise, the decision to place plaintiff in restraints was a reasonable restriction on plaintiff's right to exercise, and was well within the defendant's discretion.

Plaintiff also states that VDOC Operating Procedures prohibit the use of "ambulatory restraints" for more than forty-eight hours at a time, and argues that being kept in full restraints for a period of thirty days therefore violates VDOC policy. Pl.'s Aff., at 14 ¶ 6. Plaintiff misinterprets VDOC policy, as he is not being held in restraints for a period of forty-eight consecutive hours. Moreover, compliance with VDOC regulations has no bearing on the constitutional question in this case. See Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1999). Applying a constitutional analysis, while being held in restraints for forty-eight consecutive hours is likely to impose an atypical and significant hardship on an inmate, being held in restraints for one hour at a time, for a period of thirty days, does not impose such a hardship. For twenty-three hours in every day, plaintiff is unrestrained. Such a situation is dramatically different from an inmate held in full restraints for forty-eight consecutive hours.

See, e.g., Williams v. Benjamin, 77 F.3d 756, 769 n.10 (4th Cir. 1996) (concluding that although the initial application of restraints to quell a disturbance was proper, an inmate "so restrained would be entitled to some procedural protection [at some point in time] to ensure that his liberty interest was not being arbitrarily and capriciously denied"). Sussex I's policy of placing disruptive inmates in temporary restraints during their exercise hours is a reasonable restriction on any liberty interest plaintiff has in outdoor exercise.

As the evidence shows that plaintiff does not have a liberty interest in remaining free from restraint during exercise, the defendant did not violate plaintiff's Fourteenth Amendment Due Process rights.

## V. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this 16th day of January 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge